**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN A. WOODLEY,** | : | **CIVIL NO. 3:15-cv-0498** |
| | : | |
| **Petitioner** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN KERESTES, *et al.*,** | : | |
| | : | |
| **Respondents** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Petitioner Kevin A. Woodley ("Woodley"), a Pennsylvania state inmate, commenced this action on March 12, 2015, with the filing of a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1) He challenges the Judgment of Sentence entered on August 18, 2011, in the Court of Common Pleas of Monroe County. (Id.)

On June 1, 2015, Respondents filed a response (Doc. 8) seeking dismissal of the petition on the ground that the petition was untimely. An Order (Doc. 11) issued on November 17, 2016, denying Respondents' request for dismissal and directing briefing on the merits of the petition and production of the state court record. A response (Doc. 12) accompanied by the state court record was filed on December 8, 2016. Recently, Respondents were directed to supplement the record. That supplement was filed on May 25, 2017. (Doc. 14). The petition is ripe for disposition and, for the reasons that follow, the petition will be denied.

# I.    Factual and Procedural Background

The following relevant facts are set forth in a November 20, 2012, Pennsylvania Superior Court Opinion affirming the Judgment of Sentence:

> On November 1, 2009, the Pocono Mountain Regional Police reported to a shooting at a residence on Cedar Drive in the Emerald Lakes community in Tunkhannock Township. A Halloween party was taking place at the residence, with approximately 100 people in attendance. After an altercation at the party, Dheklan John fired a handgun into the air. Woodley then pulled out a gun and began firing multiple shots into a crowd of people. As a result, four people were injured: Kristen Richetts was shot in her leg, Jared Simpson was shot in his right foot, Joshua Rodriguez suffered a gunshot would to his left arm, and Brandon Purvis was shot in the leg.
>
> On May 4, 2010, while in prison on other criminal charges, Woodley had a conversation with Tashaun Normand ("Normand"), which the police intercepted and recorded. During the conversation, Woodley admitted that he had been at the Halloween party on Cedar Drive, that he had shot a gun into a crowd of people, hitting multiple people, and that he had shot Joshua Rodriguez.

Doc. 12-15, pp. 1-2).

On October 4, 2010, a Criminal Information was filed charging Woodley with four counts each of Attempted Homicide, Aggravated Assault – Cause or Attempt to Cause Serious Bodily Injury, Aggravated Assault – Cause or Attempt to Cause Bodily Injury with a Deadly Weapon, Simple Assault, Riot, REAP, Possessing an Instrument of Crime and Disorderly Conduct – Engaging in Fighting. (Id. at p. 2). "Following a jury trial, Woodley was found guilty of two counts of aggravated assault, four counts of simple assault, and one count each of REAP and possessing an instrument of crime. The jury acquitted Woodley of the remaining charges, and the trial court sentenced Woodley to an aggregate prison term of 66 to 132 months." (Id.) Woodley filed a timely notice of appeal, raising the following

2

issues:

1. Does a prisoner have a legitimate expectation of privacy to conversations had in his cell under the Wiretap Act and under [the] 14th and 4th Amendments of the United States Constitution and Article I, Section 8, 9 of the Pennsylvania Constitution that would require compliance with the Wiretap Act's protections for interception of conversations in a residence?

2. Did the sentencing court's failure to merge the sentences for the crimes of [REAP] with simple assault violate [Woodley's] right to a trial by jury under the Fifth and Fourteenth Amendment[s] to the United States Constitution where the element of the offense could have been established if the jury found that any of the named victims for the simple assault convictions were placed at risk of serious bodily injury?

(Id. at 3).   The Superior Court affirmed the Judgment of Sentence.  (Doc. 12-15).   The

Pennsylvania Supreme Court denied Woodley's Petition for Allowance of appeal on May 15,

2013.  See Commonwealth v. Woodley, 67 A.3d 707 (Pa. 2013).

On July 12, 2013, Woodley filed a timely petition pursuant to the Post Conviction

Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  (Doc. 12-23, p. 1).  Following a hearing,

the PCRA Court denied the petition.  (Id. at p. 2).  Woodley timely appealed, raising the

following issues in the Superior Court:

Did the trial court err in finding trial counsel was not ineffective for failing to request a corrupt and polluted source instruction since the Commonwealth relied on testimony from the co-defendant involved in the case [?]

Was the imposition of a deadly weapons [sic] enhancement a violation of [Appellant]'s right to due process since the jury was not asked to find beyond a reasonable doubt whether the weapon was used for the specific offenses to which the enhancement was applied[?]

(Id.)  On October 14, 2014, the Superior Court affirmed the trial court's order denying the

PCRA petition.  (Doc. 12-23).

3

## II.  Issues Raised in the Federal Petition

In his federal petition, Woodley raises the following grounds for relief:

Ground One:  "Petitioner's sentence was imposed in excess of the maximum allowable on the basis of findings by the judge rather than the jury."

Ground Two:  "Petitioner was convicted of the basis of evidence obtained by means that shocks the conscience" in that the wiretap recording took place in his "residence."

Ground Three:  "Trial counsel was ineffective in failing to request a corrupt and polluted source [jury] instruction."

Ground Four:  Trial counsel was ineffective in failing "to investigate or cross-examine Tyshawn [sic] Normand regarding any benefit he expected and failed to seek suppression of the statement obtained in violation of his Fifth Amendment right to counsel where his conversation was recorded while represented by counsel.

(Doc. 1, pp. 5-9).

## III.  Discussion

### A.  Exhaustion and Procedural Default

The court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  However, such an application "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to

4

resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process).  The state courts must have the first opportunity to redress any claimed violation of a habeas petitioner's federal rights.  Picard v. Connor, 404 U.S. 270, 275–76 (1971).  The habeas statute codifies this principle by requiring that a petitioner exhaust the remedies available in the courts of the State, 28 U.S.C. § 2254(b)(1)(A), meaning a state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process); see also Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard, 404 U.S. at 275 (1971); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

Relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant.  See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

5

1.     <u>Ground Two</u>

In the portion of his Traverse discussing the wiretap evidence, Woodley cites to the case of <u>Illinois v. Gates,</u> 462 U.S. 213 (1983) in challenging the "issuing magistrate['s]" probable cause determination.  (Doc. 9, p. 6).  He asserts that "[a]ssuming such a reasonable expectation of privacy is not found to exist or was present in this case, then an affidavit supported by probable cause must be attached to the application."  (Doc. 9, p. 6). This issue was not fairly presented to the state courts. The state courts must have the first opportunity to redress any claimed violation of a habeas petitioner's federal rights.  <u>Picard v. Connor</u>, 404 U.S. 270, 275–76 (1971).  The habeas statute codifies this principle by requiring that a petitioner exhaust the remedies available in the courts of the State, 28 U.S.C. § 2254(b)(1)(A), meaning a state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999) (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts,  . . .  state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process); <u>see</u> <u>also</u> <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995); <u>Picard</u>, 404 U.S. at 275 (1971); <u>Lambert v. Blackwell</u>, 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, as is the case with this issue, but state procedural rules bar further state court review, the federal court will

excuse the failure to exhaust and treat the claims as exhausted. Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); see Teague v. Lane, 489 U.S. 288, 297–98 (1989). Although deemed exhausted, such claims are considered procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 749 (1991); Lines, 208 F.3d at 160. It is evident from the record that this claim is unexhausted. "[F]ederal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default. See Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)." McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); see also Trevino v. Thaler, 133 S. Ct. 1911, 1917 (2013).

To demonstrate "cause," the petitioner must demonstrate that some objective external factor impeded his efforts to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate "actual prejudice," the petitioner must show that the errors worked to his actual and substantial disadvantage "infecting his entire [proceeding] with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bouslev v. United States, 523 U.S. 614, 623 (1998). This requires a petitioner to "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). Woodley fails to argue, let alone demonstrate cause and prejudice, with regard to this argument. Nor does he argue a fundamental miscarriage of justice. The claim is procedurally defaulted and federal habeas relief is precluded.

2.    Ground Four

Woodley failed to exhaust the claim set forth in Ground Four, that trial counsel was ineffective in failing "to investigate or cross-examine Tyshawn [sic] Normand regarding any benefit he expected and failed to seek suppression of the statement obtained in violation of his Fifth Amendment right to counsel where his conversation was recorded while represented by counsel." Although he raised these issues in his PCRA petition, they were not raised in the appeal to the Superior Court.

It is evident from the record, and Woodley concedes, that the claims contained in Ground Four are unexhausted. (Doc. 1, p. 11) In seeking to be excused from the default, he relies on the Supreme Court case of Martinez v. Ryan, 566 U.S. 1, ––, 132 S.Ct. 1309, 1320 (2012). (Doc. 1, p. 11; Doc. 9, p. 13). Martinez holds as follows:

Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the

initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (describing standards for certificates of appealability to issue).

<u>Martinez</u>, 132 S.Ct. at 1318-19. <u>Martinez</u> applies only to ineffective assistance of trial counsel claims.

> In <u>Coleman</u>, the Supreme Court held that attorney error during state collateral proceedings does not constitute cause to excuse the procedural default of a claim later raised in habeas. <u>Id.</u> at 752–53, 111 S.Ct. 2546. The Court reasoned that "[t]here is no constitutional right to an attorney in state post-conviction proceedings," <u>id.</u> at 752, 111 S.Ct. 2546 (citing <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)), and when a prisoner has no right to counsel he bears the risk of attorney error causing a procedural default, <u>id.</u> at 752–54, 111 S.Ct. 2546 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed. 2d 397 (1986)).

> However, a "prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of the federal law." <u>Martinez</u>, *supra*, at ——, 132 S.Ct., at 1316. In <u>Martinez</u>, the Court recognized a "narrow exception" to <u>Coleman's</u> statement "that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." 566 U.S., at ——, 132 S.Ct. [1309], at 1315 [2012].

<u>Norris v. Brooks</u>, 794 F3d 401, 404-05 (3d Cir. 2015). The <u>Norris</u> Court expounded on the narrow applicability of <u>Martinez</u> as follows:

> <u>Martinez</u> established an exception to the rule in <u>Coleman</u> by holding that attorney error in collateral proceedings may sometimes establish cause for the default of a claim of ineffective assistance of trial counsel. 132 S.Ct. at 1315. The <u>Martinez</u> Court made clear, however, that this is a "narrow exception." <u>Id.</u> Most importantly, the Court stated that the exception applies only to attorney error in initial-review collateral proceedings, not appeals from those proceedings. <u>Id.</u> at 1320. And the Court clarified that the exception applies only to cases in which the state formally requires prisoners to raise claims of ineffective assistance of trial

counsel on collateral review rather than direct appeal. <u>Id.</u> The reason for these caveats, it seems, is that the Court was concerned only about cases in which the error of a prisoner's collateral review attorney results in "no state court at any level" hearing the prisoner's claim and the claim being defaulted for purposes of habeas review in federal court. <u>Id.</u> at 1316. Outside of these "limited circumstances," <u>Martinez</u> made clear that <u>Coleman</u> remains the law. <u>Id.</u> at 1320.

<u>Norris</u>, 794 F.3d at 404-05.

Reliance on <u>Martinez</u> is misplaced. <u>Martinez</u> only applies to attorney error in the initial review collateral proceedings. Woodley seeks to be excused from the default based on the ineffectiveness of his PCRA counsel in failing to raise an ineffective assistance of trial counsel claim in his appeal from the PCRA Court's November 20, 2013, denial of his Amended PCRA petition. (Doc. 12-21). Because <u>Martinez</u> does not apply to appeals from initial review collateral proceedings, Woodley is unable to establish cause on this basis. In the absence of cause, the court will not address the issue of prejudice. In turn, the miscarriage of justice exception is inapplicable because Woodley has not provided new reliable evidence of his actual innocence. The claim is therefore procedurally defaulted and federal habeas relief is precluded.

## B.    Claims Adjudicated on the Merits by the State Courts

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"

or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," Greene v. Fisher, — U.S. — , 132 S.Ct. 38, 43 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal quotation marks and citation omitted). The burden is on Hunt to prove entitlement to the writ. Id.

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A decision is an "unreasonable application" of federal law if the state court identified the correct governing legal rule but applied the rule to the facts of the case in an objectively unreasonable manner. Renico v. Lett, 559 U.S. 766, 773 (2010). A decision is based on an "unreasonable determination of the facts" if the state court's factual findings are objectively unreasonable in light of the evidence presented to the state court. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

1.   Ground One

In Ground One, Woodley asserts that his sentence "was imposed in excess of the

maximum allowable on the basis of findings by the judge rather than the jury." (Doc. 1, p. 5). The Superior Court addressed this issue during the direct appeal as follows:

> In his second claim, Woodley contends that the sentencing court should not have imposed separate consecutive sentences for his REAP and simple assault convictions and that the sentences should have merged. Brief for Appellant at 18. Woodley argues that the record does not support the sentencing court's reasoning that it was possible someone other than the four named victims was placed at risk because he had fired his gun into a crowd of people. *Id.* Woodley points to the court's charge to the jury which did not specify that the person being endangered was someone other than the named victims. *Id.* at 19-20. Woodley asserts that because the jury did not make a finding as to the specific identity of the other person endangered, the crimes must merge for sentencing purposes. *Id.* at 21.

(Doc. 12-15, p. 7). The state court then engaged in a lengthy discussion of the state merger doctrine which is found at 45 PA.C.S.A. § 9765, and the prohibition against merger where a defendant commits multiple distinct criminal acts. (Id. at 8-10). There is not a single reference to federal law.

A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. Engle v. Isaac, 456 U.S. 107, 119 (1982). Violations of state law, standing alone, will not entitle a petitioner to federal habeas relief, absent a showing that those violations are so great as to be of a constitutional dimension. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (federal habeas courts are not permitted to review questions of state law); Wainwright v. Sykes, 433 U.S. 72, 81 (1977) (questions of state substantive law not cognizable on federal habeas review); Priester v. Vaughn, 382 F.3d 394, 401–02 (3d Cir. 2004) (same).

Woodley's Ground One claim, that certain crimes should have merged for purposes of

sentencing, does not implicate the laws or the Constitution of the United States. In fact, habeas challenges to a state court's sentencing discretion are unreviewable by a federal court provided that the sentence lies within the statutory guidelines, is not based upon arbitrary considerations, and the defendant's constitutional rights were not violated. See Estelle, 502 U.S. at 67–68 (explaining that federal habeas courts are not permitted to review questions of state law); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (same); Wainwright, 433 U.S. at 81 (indicating that questions of state substantive law are not cognizable on federal habeas review); Townsend v. Burke, 334 U.S. 736, 741 (1948) (stating that when a state "sentence [is] within the limits set by the statute, its severity would not be grounds for [habeas] relief"); see also Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42–43 (3d Cir.1984) (finding that  court's sentencing discretion was not cognizable in federal habeas petition); Smith v. Kerestes, Civ. A. No. 08–0061, 2009 WL 1676136, at *16 (E.D.Pa. June 15, 2009) (rejecting petitioner's claim that his state sentence was excessive because "absent a Constitutional violation, a federal court has no power to review a sentence in a habeas corpus proceeding unless it exceeds statutory limits").

In addressing the issue, the Superior Court relied on the following "sound reasoning of the trial court":

> To sustain a conviction under Section 2705 [REAP], the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to inflict harm and not merely the apparent ability to do so.  Danger, not merely the apprehension of danger, must be created.  The *mens rea* for [REAP] is a "conscious disregard of a known risk of death or great bodily harm to another person."  *Commonwealth v. Klein*, 795 A.2d 424, 427-28 (Pa. Super. 2002). . . .

13

Simple Assault, as charged in this case, is defined at 18 PA.C.S.A. § 2701(a)(1). Section 2701(a)(1) states:

(a) Offense defined. – A person is guilty of assault if he:

(1) Attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another . . .

18 PA.C.S.A. § 2701(a)(1).

Our Superior Court has held that the crimes of Simple Assault and [REAP] merge as long as they both arise from the same set of facts. *Commonwealth v. Peer*, 684 A.2d 1077[, 1081] (Pa. Super. 1996).

In this case, four victims were injured because of [Woodley's] actions: Jaret Simpson, Kristen Richetts, Brandon Purvis, and Joshua Rodriguez. As a result, four counts of Simple Assault, one specifically for each victim, were included in the Commonwealth's criminal information. Additionally, both [the trial court's] charge to the jury and the verdict slip itself similarly delineated the four simple assault charges for each specific victim. N.T. 6/9/11, at 135-58. [See also *id.* At 138 (wherein the trial court, during the jury instructions, differentiated between the charges involving the four named victims and the other remaining charges, including REAP).] [footnote omitted]

However the lone charge of [REAP] did not name a specific victim. In the criminal information, it states:

On or about Novmeber 1, 2009[,] in the County of Monroe, Tunkhannock Township, Pennsylvania, [Woodley] did recklessly engage in conduct which placed or may have placed another person in danger of death or serious bodily injury, to wit: [Woodley] shot into a crowd of people.

Criminal Information [emphasis removed]. Moreover, in both its opening and closing and through the testimony of witnesses, the Commonwealth emphasized the fact that [Woodley] shot into a crowd of people. [N.T. citations omitted]. This element is completely different from that in Simple Assault.

Where there are multiple victims of a defendant's criminal conduct, separate punishments are not barred by the merger doctrine. That is true even where there is only a single criminal transaction. *Commonwealth v. Burdge*, 562 A.2d 864, 867 (Pa. Super. 1989). . . .

14

> [Woodley's] act of taking aim and shooting a loaded weapon into a crowd of people not only endangered the lives of the above victims, but also endangered the lives of the remaining people in the crowd who were lucky enough not to sustain an injury. In shooting into the crowd of people, even if [Woodley] did not injure a single [soul], he still could be validly charged with [REAP]. As such, we find that merger is not proper.
>
> Trial Court Opinion, 1/9/12, at 10-12.

(Doc. 12-15, pp. 8-10). Based on the above, it is clear that the sentence lies within the statutory guidelines, is not based upon arbitrary considerations, and was applied within the broad limits established by the Constitution. Consequently, Woodley's claim concerning the decision that merger, as governed by state law, was improper, fails to raise a cognizable claim for federal habeas relief.

In his Traverse, Woodley raises, for the first time in the context of the sentencing merger issue, the case of Apprendi v. New Jersey, 530 U.S. 466 (2000). (Doc. 9, pp. 2-3). Specifically, he contends that "the jury was not instructed to find that a victim other than the named victims was endangered before convicting Petitioner of Recklessly Endangering Another Person nor was a special interrogatory sent to the jury." (Id.) He concedes that the issue has not been presented to the state courts and attempts to excuse the procedural default by relying on Martinez v. Ryan, 132 S.Ct. at 1320, arguing that his PCRA counsel was ineffective in failing to raise this new rule of constitutional law in the Amended PCRA petition. First, as noted *supra*, Martinez only applies to a PCRA counsel's failure to raise an ineffective assistance of trial counsel claim in the initial review collateral proceeding. Here, Woodley faults PCRA counsel for not raising a procedural sentencing issue. Further, the

Court notes that the issue is wholly without merit as the merger issue is a question of law, not a question for the jury. The Superior Court specifically stated "[i]nitially, we note that merger is a nonwaivable challenge to the legality of the sentence. The issue is a pure question of law, allowing for plenary review." (Doc. 12-15, pp. 7-8, citing Commonwealth v. Pettersen, 49 A.3d 903, 911 (Pa. Super. 2012).

      2.    Ground Two

In his second ground, Woodley essentially argues that he had a legitimate expectation of privacy in his jail cell and that the recording of his conversation with Tashaun Normand violated his Fourth and Fourteenth Amendment rights. Woodley offers the following:

> Petitioner is cognizant that the United States Supreme Court has upheld in Hudson v. Palmer, 468 U.S. 517 (1984) a random search of an inmate's prison cell, concluding that the Fourth Amendment's [sic] was not applicable because an inmate has no reasonable expectation of privacy in his or her cell. Id. at 526. There was a finding in the initial Order issued in this case under Pennsylvania's Wiretap Act that declared Petitioner's home to be the Monroe County Correctional Facility. While an intrusion into the cell may be expected at random in order to further the interest of security purposes, it is not expected that one's conversations will be recorded. Therefore, while there may be no reasonable expectation of privacy in the contents of the cell, there may be an expectation of privacy in the discussions held inside of a cell.

(Doc. 9, pp. 5-6). It is his position that "[t]he Superior Court's 'adjudication of this claim' with respect to the constitutionality of how the evidence was obtained, 'resulted in a decision that . . . involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, 28 U.S.C. § 2254(d)(1), to wit, the

Fourth Amendment rights denial,. . . ."[1]  (Id. at 7).

The Superior Court set forth the following law when considering Woodley's

constitutional claim:

> [T]he Fourth Amendment of the United States Constitution states that "[t]he right
> of the people to be secure in their persons, houses, papers, and effects, against
> unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend.
> IV.  However, these protections have not been extended to a jail cell.  *See Hudson
> v. Palmer*, 468 U.S. 517, 526 (1984) (concluding that the Fourth Amendment's
> proscription against unreasonable searches and seizures was not applicable
> because an inmate has no reasonable expectation of privacy in his or her prison
> cell); *Lanza v. State of New York*, 370 U.S. 139, 143 (1961) (stating that a public
> jail is not the equivalent of a man's house as a jail shares none of the attributes of
> privacy of a home); *Johnson v. Desmond*, 658 A.2d 375, 377 (Pa. Super. 1995)
> (concluding that an inmate had no reasonable expectation of privacy in his prison
> cell); *see also Deblasio v. Pignoli*, 918 A.2d 822, 825 (Pa. Cmwlth. 2007) (stating
> that a jail cell is the "place where a detainee's privacy is lost.").

(Doc. 12-15, p. 6).  This standard is in accordance with applicable Supreme Court precedent.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const.

amend. IV. "The touchstone of the Fourth Amendment is reasonableness." Florida v.

Jimeno, 500 U.S. 248, 250 (1991).  In order to avail himself of the protections afforded by

the Fourth Amendment, a defendant must demonstrate "that he personally has an expectation

of privacy in the place searched, and that his expectation is reasonable. . . ." Minnesota v.

Carter, 525 U.S. 83, 88 (1998).  Because privacy is greatly curtailed by the nature of the

---

[1] In his discussion of this issue in his Traverse, Woodley references the Supreme Court case
of Illinois v. Gates, 462 U.S. 213 (1983).  (Doc. 9, pp. 6-7).  Illinois v. Gates reaffirmed the Supreme
Court's adherence to the totality-of-the-circumstances analysis that guides an issuing magistrate's
probable cause determination. Id. at 237.  As noted *supra*, Woodley's probable cause claim, asserted
for the first time in his Traverse, is procedurally defaulted and will not be considered.

prison environment, a detainee's Fourth Amendment rights likewise are diminished. <u>Hudson v. Palmer</u>, 468 U.S. 517, 526 (1984) (holding that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell"); <u>Bell v. Wolfish</u>, 441 U.S. 520, 537 (1979) ("[l]oss of freedom of choice and privacy are inherent incidents of confinement in such a facility.").

In applying the standard, the state court concluded that Woodley did not have an expectation of privacy in his prison cell. (Doc. 12-15, p. 6). "Indeed, Woodley has not cited to any case law supporting his assertion that his expectation of privacy in a prison cell is equivalent to an expectation of privacy in a home. Further, Woodley has not cited to the record to support his assertion that an order issued in this case listed his 'home' as the Monroe County Correctional Facility. . . . Accordingly, Woodley's [ ] claim is without merit." (<u>Id.</u> at 6-7). This conclusion is in accord with Supreme Court precedent. "[T]o say that a public jail is the equivalent of a man's 'house' . . . is at best a novel argument. . . . it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day." <u>Lanza v. New York</u>, 370 U.S. 139, 143 (1962). <u>See</u> <u>Price v. Johnston</u>, 334 U.S. 266, 285 (1948).

The Superior Court's determination, that Woodley was not entitled to a reasonable expectation of privacy in his prison cell and that the recording of his conversation with Tashaun Normand did not run afoul of the Fourth Amendment, is in accord with, and involved a reasonable application of, clearly established United States Supreme Court

precedent.  Consequently, no relief is warranted on this ground.[2]

      3.    <u>Ground Three</u>

In his third ground, Woodley contends that trial counsel was ineffective in failing to request a "corrupt and polluted source" jury instruction.  (Doc. 1, p. 8).  The test for ineffective assistance of counsel is well settled and firmly established.  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  "Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  <u>Id.</u>

In analyzing Woodley's ineffective assistance of counsel claims, the state court utilized the following three pronged state law test of ineffectiveness:

> To obtain relief on a claim of ineffective assistance of counsel, a PCRA petitioner must plead and prove: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) resulting prejudice such that there is a reasonable probability that the result of the proceedings would have been different but for counsel's error.  <u>Commonwealth</u>

---

[2]Woodley included in his Traverse a challenge to the wiretap evidence based on the § 5704 of Pennsylvania Wiretapping and Electronic Surveillance Control Act.  (Doc. 9, p. 5).  A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts.  <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982).  Violations of state law, standing alone, will not entitle a petitioner to federal habeas relief, absent a showing that those violations are so great as to be of a constitutional dimension.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68 (1991) (federal habeas courts are not permitted to review questions of state law); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 81 (1977) (questions of state substantive law not cognizable on federal habeas review); <u>Priester v. Vaughn</u>, 382 F.3d 394, 401–02 (3d Cir. 2004) (same).

v. Lippert, 85 A.3d 1095, 1100 (Pa. Super. 2014) (quoting Commonwealth v. Barndt, 74 A.3d 185, 191-92 (Pa. Super. 2013)).  Finally, a petitioner must satisfy all three prongs of the test for ineffectiveness, or the claim must be rejected. Commonwealth v. Baumhammers, 92 A.3d 708, 719 (Pa. 2014).

(Doc. 12-23, p. 3).  The United States Court of Appeals for the Third Circuit has ruled that

this standard is not "contrary to" Strickland.  Werts v. Vaughn, 228 F. 3d 178, 203 (3d Cir.

2000).

Woodley contends that the Superior Court unreasonably applied Strickland.  (Doc. 9,

p. 9).  Therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of

Strickland to [petitioner's] ineffectiveness claim[s] was objectively unreasonable, *i.e.*, the

state court decision evaluated objectively and on the merits, resulted in an outcome that

cannot reasonably be justified under Strickland."  Werts, 228 F.3d at 204.

In support of his position, Woodley argues as follows:

The Superior Court focused on the reason for counsel's tactic without acknowledging or assessing that it came at great cost to Petitioner.  Tactics are not reasonable because they support a defense argument; tactics are reasonable if they do more good than harm, and alternatives are weighed.  See, Berryman v. Morton, 100 F.3d 1097 (3d Cir. 1996) (noting the distinction between counsel having some strategy and counsel having a strategy that was reasonable).

Indeed, it is typical that an ineffectiveness claim is rejected because counsel assessed the twin aspects of proffered evidence – that it might support a theory but could also cause harm – and then made a decision to forego the proof.

Here the Pennsylvania courts required no showing that counsel weighed the alternatives – rather, any strategy became a reasonable strategy.  This is an unreasonable application of Strickland; accordingly, Petitioner is entitled to relief on this claim.

(Doc. 9, pp. 8-9).

In evaluating counsel's performance in accordance with Strickland, the Superior Court first determined that the underlying claim of counsel's failure to request a "corrupt and polluted source" jury instruction had arguable merit. (Doc. 14, p. 4). In considering the second prong, the reasonableness of counsel's decision not to request the instruction, the court concluded that "it is clear from the record trial counsel had a reasonable strategy intended to effectuate Appellant's interest. While the strategy might not have worked as hoped, this is not sufficient for finding ineffective assistance of counsel." (*Id.* at 6) (citations omitted). In support of this conclusion, the court stated the following:

> Appellant acknowledges that well-settled "case law suggest that it is a reasonable trial tactic for counsel to forego requesting a corrupt and polluted source instruction where the trial strategy is to prove he/she was not involved in the crime." Appellant's Brief at 17. Nonetheless, according to Appellant, the jury charge was still appropriate because the defense strategy was to show that co-defendant was accomplice to someone else, not Appellant.

> This reinterpretation of trial counsel's strategy is not consistent with Appellant's own summary of trial counsel's stated strategy, and finds no support in the record. In fact, the trial court found Appellant's strategy was to show that co-defendant was the shooter, and that he had nothing to do with the shooter or the shooting. Trial Court Opinion, 11/21/13, at 6.

> Appellant's argument fails to account for the applicable standard of review of ineffective assistance of counsel claims. A court may find the strategy employed had no reasonable basis "only if [a]ppellant proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued, *Commonwealth v. Hutchinson*, 25 A.3d 277, 285 (Pa. 2011) (citation omitted), or, the alternative, that "in light of all the alternatives available to trial counsel, the strategy actually employed by him was so unreasonable that no competent lawyer would have chosen that course of conduct." *Commonwealth v. Williams*, 640 A.2d 1251, 1265 (Pa. 1994). "Counsel's decisions will not be considered reasonable if they effectuated his client's interests." *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (citing *Commonwealth v. Miller*, 987 A.2d 638, 653 (Pa. 2009)). "We do not employ a hindsight analysis in

comparing trial counsel's actions with other efforts he may have taken." *Id.* Finally, "[a]lthough we do not disregard completely the reasonableness of other alternatives available to counsel, the balance tips in favor of a finding of effective assistance as soon as it determined that trial counsel's decision had any reasonable basis." *Commonwealth v. Cooper*, 941 A.2d 655, 664 (Pa. 2007) (quotations marks and citations omitted).

Here, Appellant has demonstrated, if anything, there was an alternative to the strategy employed by counsel. However, Appellant failed to argue, let alone prove, the alternative "offered a potential for success substantially greater that [sic] the course actually pursued" or that "no competent lawyer would have chosen that course of action." *Hutchinson*, *supra*; *Williams*, *supra*. The challenge, in fact, amounts to second guessing trial counsel. We will not do so. *Commonwealth v. Rivers*, 786 A.2d 923, 930 n. 5 (Pa. 2001).

(Doc. 14, pp. 6-8).

In support of its determination, the Superior Court cites the PCRA court's decision. (Id. at 5). At the PCRA hearing, Woodley's trial counsel testified that he did consider requesting the instruction and could have asked that it be given; hence, the PCRA court concluded that the underlying claim had arguable merit. (Doc. 12-21, p. 5). However, the PCRA court found "that the record amply supported a conclusion that trial counsel ha[d] some reasonable basis for not requesting the accomplice charge." (Id. at 6). "Defendant's Trial counsel testified at the PCRA hearing that 'he concluded that a corrupt source instruction was against the position taken by Defendant at trial and would have done more harm than good.' " (Id.) Specifically, "[c]ounsel argued [at trial] that Defendant was innocent, and the defense strategy was to show that John shot the gun into the crowd. Trial counsel stated that it was Defendant's position during the trial that he was not the shooter – rather John was responsible. Just like in Karabin, instructing the jury that John's testimony

should be used cautiously because Defendant and John were accomplices would be damaging to his defense and confusing to the jury. Therefore we find that there was a reasonable strategic basis in not requesting a corrupt and polluted source instruction." (Doc. 12-21, p. 6).

The foregoing demonstrates that the Pennsylvania courts' application of <u>Strickland</u> was objectively reasonable, *i.e.*, the state court decisions evaluated objectively and on the merits, resulted in an outcome that can reasonably be justified under <u>Strickland</u>. Consequently, Woodley is not entitled to relief on this claim.

## IV.  **Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003). Pettiioner fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Woodley from appealing the order denying his petition so long as he seeks, and obtains, a certificate of appealability from the court of appeals. <u>See</u> Fed. R. App. P. 22(b)(1), (2).

## V.  <u>Conclusion</u>

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied.

A separate order will enter

**BY THE COURT:**


**<u>s/James M. Munley</u>**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated:     May 31, 2017